UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

HUGH WYATT,

     Plaintiff,

    -against-          15cv1935

THE FEDERAL COMMUNICATIONS    OPINION & ORDER
COMMISSION, EMMIS
COMMUNICATIONS, THE YUCAIPA
COMPANIES, LLC, TIME WARNER INC.,
AND PIERRE SUTTON,

     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WILLIAM H. PAULEY III, District Judge:

    Plaintiff pro se Hugh Wyatt brings this action against Defendants WBLS-WLIB, LLC, WBLS-WLIB License, LLC, and WLIB Tower LLC (the "Emmis Defendants," identified in the Complaint as "Emmis Communications"), as well as YMF Media, LLC and YMF Media New York, LLC (the "YMF Defendants," identified in the Complaint as "The Yucaipa Companies, LLC") (collectively, "Defendants") alleging claims arising out of the sale of radio assets.[1] Defendants move to dismiss the Second Amended Complaint ("Complaint") and for sanctions against Wyatt. Defendants' motion to dismiss the Complaint is granted and their motion for sanctions is denied.

I.  Background

    Wyatt is a shareholder of Inner City Broadcasting Corporation ("ICBC"), the parent corporation of Inner City Media Corporation ("ICMC"). In August 2011, senior secured

---

[1] The docket does not indicate that the Time Warner Inc. or Pierre Sutton have been served with a copy of the summons and complaint. The docket indicates that the Federal Communications Commission ("FCC") was served on June 2, 2015, but has failed to interpose an answer or make an appearance. (See ECF No. 11.)

creditors filed involuntary Chapter 11 bankruptcy petitions against ICMC in the Southern District of New York.  (Compl. ¶ 40.)  In September 2011, the Bankruptcy Court entered orders for relief and styled the Chapter 11 case as <u>In re Inner City Media Corporation, et al.</u>, No. 11-13967 (SCC).  In December 2011, ICMC filed a motion to sell the vast majority of its assets—including the two radio licenses for WBLS and WLIB—to YMF Media, LLC, an entity organized by ICMC's senior secured creditors.  (<u>See</u> Compl., ¶¶ 41–42.)

In February 2012, the Bankruptcy Court authorized the sale subject to the FCC's consent.  In its Order, the Bankruptcy Court found that the debtors had "full corporate power and authority" to execute the asset purchase agreement and consummate the transactions.  (<u>See</u> January 15, 2016 Declaration of Marianna Udem ("Udem Decl.") (ECF No. 39), Ex. A ("Sale Order"), § F.)  The Bankruptcy Court also found that YMF Media, LLC and the senior creditors acted in good faith and without collusion in negotiating the asset purchase agreement and that none of the parties engaged in conduct that would permit avoidance of the transaction.  (<u>See</u> Sale Order, § G.)  The Order also states that the consideration provided by YMF Media, LLC constituted "reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States."  (Sale Order, § K.)

Notwithstanding the Bankruptcy Court's approval, Wyatt claims that the sale was the product of a "collusive, covert, fraudulent plan" orchestrated by the YMF Defendants and ICMC's Chairman, Pierre Sutton.  (Compl. ¶ 62.)  Under this alleged scheme "to strip ICBC of its assets" (Compl. ¶ 47), Sutton "was able to let the creditors, whom he set up, gain control of ICBC and ICMC assets as well as empowering the lenders over the ICBC assets and harming ICBC's ability to sustain the income stream it had been used to" (Compl. ¶ 52).  In return, the

2

YMF Defendants allegedly promised to retain Sutton as a consultant and pay him $800,000 per year. (Compl. ¶ 53.)

In April 2012, one of ICMC's affiliated debtors filed an application with the FCC for its consent to assign the broadcast licenses to YMF Media, LLC. (See Compl. ¶ 84.) Despite Wyatt's allegations of fraud regarding the proposed transaction, the FCC approved it. (Compl. ¶¶ 81, 86; Compl. Exs. A, B.)

In February 2014, Emmis Communications, the parent corporation of the Emmis Defendants, announced an agreement with the YMF Defendants to purchase their radio assets, subject to the consent of the FCC. (See Udem Decl., Ex. B.) One year later, those radio assets were transferred to Emmis Communications.

II.     Motion to Dismiss

A.  Legal Standard

"The proper procedural route" for standing challenges "is a motion under Rule 12(b)(1)." All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 89 (2d Cir. 2006). "When the Rule 12(b)(1) motion is facial, i.e., based solely on the allegations of the complaint or the complaint and exhibits attached to it . . . , the plaintiff has no evidentiary burden." Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016). "The task of the district court is to determine whether the [p]leading[s] allege facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." Carter, 822 F.3d at 56 (internal quotation marks and original alterations omitted). For such motions, the standard is similar to a Rule 12(b)(6) motion: Courts must "assume all 'well-pleaded factual allegations' to be true, and 'determine whether they plausibly give rise to an entitlement to relief.'" Selevan v. N.Y.

3

Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

B. Discussion

As an initial matter, this Court is bound to construe a pro se plaintiff's "complaint to raise the strongest claims that it suggests." Williams v. Correction Officer Priatno, No. 14-4777, --- F.3d ----, 2016 WL 3729383, at *3 (2d Cir. July 12, 2016) (citation omitted). Plaintiff asserts no legal claims in the Complaint, but instead asks for relief "in all forms the court has the power to grant . . . including . . . monetary damages in the amount of $100,000,000." (Compl. at 3; see Pl. Br., ¶ 19 ("I have asked the court to determine the relief it sees fit.").) Reading the Complaint in the broadest possible terms, Wyatt's allegations can best be construed as claims of fraud or for fraudulent conveyance.[2]  Defendants argue that Plaintiff lacks standing to assert claims arising out of the sale of ICMC's assets and that Plaintiff fails to state a claim for relief.[3]

1. *Standing*

"For a wrong against a corporation a shareholder has no individual cause of action, though he loses the value of his investment or incurs personal liability in an effort to maintain the solvency of the corporation." Abrams v. Donati, 66 N.Y.2d 951, 953 (N.Y. 1985); Serino v. Lipper, 123 A.D.3d 34, 39 (1st Dep't 2014) ("It is black letter law that a stockholder has no individual cause of action against a person or entity that has injured the corporation.").[4]

---

[2] This Court declines to construe the claims as a challenge to the Sale Order. The proper forum to lodge objections to the sale was in the Bankruptcy proceeding and any appeal is untimely. See Fed. R. Bankr. P. 8002(a). Additionally, this Court declines to construe the claims as a Rule 60(b)(3) motion because such claims would be untimely. See Fed. R. Civ. P. 60(c)(1).

[3] Defendants assert that Plaintiff's claims should be dismissed with prejudice for lack of "standing." However, "where a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice, rather than with prejudice." Carter v. HealthPort Techs., LLC, 822 F.3d 47, 54 (2d Cir. 2016).

[4] The parties do not specify the place of incorporation, but Defendants cite New York case law and the Bankruptcy Court analyzed various issues under New York law. Accordingly, this Court assumes the applicability

Limited exceptions have been recognized when the "wrongdoer has breached a duty owed to the shareholder independent of any duty owing to the corporation wronged." Abrams, 66 N.Y.2d at 953. "But allegations of mismanagement or diversion of assets by officers or directors to their own enrichment, without more, plead a wrong to the corporation only, for which a shareholder may sue derivatively but not individually." Abrams, 66 N.Y.2d at 953.

Wyatt's allegations center around the sale of corporate assets. The Complaint alleges that Sutton mismanaged ICBC and diverted assets to his benefit. (See Compl. ¶ 47 ("Sutton colluded and committed fraud . . . to strip ICBC of its assets."); ¶ 53 ("Sutton was promised a quid pro quo by Yucaipa . . . for engineering this plan."); ¶ 66 ("Sutton in his capacity as Chairman of the Board abused his power in the sale of The Companies' assets.").) These claims belong to the corporation, not Wyatt. Accordingly, Plaintiff lacks standing to proceed individually and may only sue derivatively, on behalf of the Corporation. See Wyatt v. Inner City Broadcasting Corp., No. 12-cv-8366 (JPO) (Apr. 17, 2013) (affirming appeal from Bankruptcy Order finding that, as a shareholder, Wyatt lacked standing to pursue claims arising out of the sale of ICBC trademarks).

To bring a derivative action under New York Law, a plaintiff must "set forth with particularity the efforts of the plaintiff to secure the initiation of such action by the board or the reasons for not making such effort." Marx v. Akers, 88 N.Y.2d 189, 193 (N.Y. 1996) (quoting Business Corporation Law § 626(c)); see also Fed. R. Civ. P. 23.1 ("The Complaint must . . . "state with particularity . . . any effort by the plaintiff to obtain the desired action from the directors . . . ; and . . . the reasons for not obtaining the action or not making the effort."). But Wyatt specifically disclaims that he is bringing a derivative action. (See Pl. Br., at 1 ("This is

---

of New York law. Seybold v. Groenink, No. 06-cv-772 (DLC), 2007 WL 737502, at *5 (S.D.N.Y. Mar. 12, 2007) (finding internal affairs doctrine mandates application of law of place of incorporation to govern shareholder suits).

5

not a derivative claim as the Defendant wrongly suggests."). And, in any event, the Complaint is bereft of allegations that a demand was made or would have been futile. Thus, Plaintiff lacks standing to proceed derivatively.

Similarly, Plaintiff lacks standing to pursue a claim of fraudulent conveyance arising out of the Sale Order. Under the New York Debtor and Creditor Law, only a creditor or representative of a creditor has standing to pursue a fraudulent transfer claim. See Eberhard v. Marcu, 530 F.3d 122, 133 (2d Cir. 2008) ("Because he does not represent any creditor . . . , we conclude that the Receiver lacks standing to set aside the purported conveyance."); N.Y. Debt. & Cred. Law § 276 ("Every conveyance made and every obligation incurred with actual intent . . . to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."). Plaintiff is not a creditor and does not represent the interests of any creditor. Accordingly, he lacks standing to pursue a claim of fraudulent conveyance.

"[W]hen a plaintiff lacks standing to bring suit, a court has no subject matter jurisdiction over the case." In re U.S. Catholic Conference (USCC), 885 F.2d 1020, 1023 (2d Cir. 1989). Accordingly, this Court need not address the substantive grounds for dismissal and this action is dismissed in its entirety.

   III.   Motion for Sanctions

A. Legal Standard

Rule 11(b) provides that any filing or representation to the Court constitutes a certification that:

> **(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; . . .
>
> **(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

6

Fed. R. Civ. P. 11(b).  Courts apply an "objective standard of reasonableness" when determining whether Rule 11 sanctions are appropriate.  MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc., 73 F.3d 1253, 1257 (2d Cir. 1996).  "Rule 11 is violated only when it is patently clear that a claim has absolutely no chance of success."  Oliveri v. Thompson, 803 F.2d 1265, 1275 (2d Cir. 1986) (internal quotation marks omitted).  And "[w]hen divining the point at which an argument turns from merely losing to losing and sanctionable, . . . courts [must] resolve all doubts in favor of the signer" of the pleading.  Rodick v. City of Schenectady, 1 F.3d 1341, 1350 (2d Cir. 1993) (internal quotation marks omitted).

"A sanction imposed under [Rule 11] must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."  Fed. R. Civ. P. 11(c).  "When a court determines that Rule 11 sanctions are appropriate, it has 'has significant discretion in determining what sanctions, if any, should be imposed for a violation,' bearing in mind 'that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons.'"  E. Gluck Corp. v. Rothenhaus, 252 F.R.D. 175, 179 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 11 Advisory Committee Note).  Sanctions may include "nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."  Fed. R. Civ. P. 11(c)(4).

B.  Discussion

"If a litigant has a history of filing 'vexatious, harassing or duplicative lawsuits,' courts may impose sanctions, including restrictions on future access to the judicial system."  Hong Mai Sa v. Doe, 406 F.3d 155, 158 (2d Cir. 2005) (quoting Iwachiw v. N.Y. State Dep't of

7

Motor Vehicles, 396 F.3d 525, 528 (2d Cir. 2005). To determine whether to restrict future court-access, courts consider:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

Safir v. U.S. Lines, Inc., 792 F.2d 19, 24 (2d Cir. 1986); Mitchell v. Brooklyn Hosp. Ctr., No. 14-cv-4359 (RRM), 2016 WL 4203474, at *3 (E.D.N.Y. Aug. 9, 2016). The ultimate question is whether the litigant is likely to continue to abuse the judicial process and harass other parties. See Safir, 792 F.2d at 24.

The first, second, and fourth factors weigh in favor of Defendants. Plaintiff has brought several law suits concerning ICBC, ICMC, and their debtors. Though the nature of the lawsuits may be varied, they all appear to stem from Plaintiff's disagreement with the management of ICBC and Sutton's purported fraud. For instance, in Wyatt v. ICBC et al., No. 11-cv-4954 (S.D.N.Y.) (PKC), Plaintiff brought suit against ICBC and several of its debtors claiming RICO and SEC violations. Judge Castel dismissed the claims against ICBC for failure to state a claim and stayed the claims against ICBC debtors due to the initiation of Chapter 11 bankruptcy proceedings.

Plaintiff also filed a proceeding challenging the sale of ICBC trademarks. See In re Inner City Media Corp., et al., No. 11-13967 (Bankr. S.D.N.Y. Sept. 24, 2012) (SCC). The Bankruptcy Court dismissed those claims for, among other reasons, lack of subject matter jurisdiction. And on appeal, in Wyatt v. Inner City Broadcasting Corp., No. 12-cv-8366 (S.D.N.Y.) (JPO) (Apr. 17, 2013), Judge Oetken affirmed the Bankruptcy Court's dismissal of

Wyatt's claims. There is little doubt that the multiple proceedings initiated by Wyatt required Defendants to spend time and money.

The third factor favors Plaintiff, as he is proceeding pro se. But, this Court notes, Wyatt's status as a pro se litigant does not preclude this Court's ability to enjoin him. "[A] court's authority to enjoin vexatious litigation extends equally over pro se litigants and those represented by counsel, and a court's "special solicitude" towards pro se litigants does not extend to the willful, obstinate refusal to play by the basic rules of the system upon whose very power the plaintiff is calling to vindicate his rights." Lipin v. Hunt, 573 F. Supp. 2d 836, 845 (S.D.N.Y. 2008) (internal quotation marks omitted).

Considering all of these factors, because Wyatt is proceeding pro se and his various law suits arise in different procedural postures and appear to involve somewhat different claims, this Court declines to impose sanctions. However, this Court is sympathetic to Defendants' concerns and cautions Plaintiff that any future filings concerning the assets of ICBC or ICMC or mismanagement of either corporations may result in a sanction that could include payment of attorneys' fees and other sanctions in this Court's discretion. See Mitchell, 2016 WL 4203474, at *5.

Accordingly, this Court declines to impose an anti-filing injunction or other sanctions under Rule 11 or this Court's inherent authority at this time.

CONCLUSION

Defendants' motion to dismiss is granted and Defendants' motion for sanctions is denied.

The Clerk of Court is directed to mail a copy of this Order to Plaintiff pro se Hugh Wyatt, terminate all pending motions and mark this case as closed.

Dated: September 14, 2016
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.